IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **ROZANNE KINGSTON,** *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | **Case No.: GJH-20-0584** |
| **MARYLAND DEPARTMENT OF,** **HEALTH AND HUMAN SERVICES,** *et al.*, | * | |
| | * | |
| Defendants. | * | |
| * * * * * * * * * * * * * | | |

**MEMORANDUM OPINION**

Plaintiffs Rozanne Kingston and Daniel Brashear, each proceeding *pro se*, brought this civil action pursuant to 42 U.S.C. § 1983 on behalf of Ms. Kingston's daughter, C.K., and themselves, alleging that Defendants[1] intentionally and willfully subjected C.K. to, *inter alia*, false arrest and false imprisonment, bodily mutilation, severe and ongoing mental and emotional distress, and denial of freedom of association. ECF No. 1. Pending before the Court is State Defendants' Motion to Dismiss, ECF No. 24. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, State Defendant's Motion to Dismiss is granted.

---

[1] In the Complaint, Plaintiffs name Maryland Department of Human Services ("DHS"), the Prince George's County Department of Social Services ("PGDSS"), Prince George's County Office of Law, Lourdes R. Padilla, Gloria Brown-Burnett, Thomas Weimer, Shara Hayden, Mary Peyton, Jared McCarthy, Laurie Wilkerson, Laurentia Lewis, and Defendant Ramone as Defendants. ECF No. 1. This Motion to Dismiss, however, was filed by DHS, PGDSS, DHS Secretary Lourdes R. Padilla, PGDSS Director Gloria Brown-Burnett, Thomas Weimer, Shara Hayden, and Mary Petyon (collectively, "State Defendants"). ECF No. 24-1 at 1.

**I.     BACKGROUND**

   **A.     Factual Background**[2]

During the summer of 2016, C.K., a minor, went on a camping vacation in Maryland with her sister Anne Moreland, her nephew T.D., and Ms. Moreland's business associate Plaintiff Daniel Brashear.[3] ECF No. 1 at 2, 4.[4] Mr. Brashear had converted one of his organization's vans into a camper with all the necessary amenities for the group to camp on the property of Joan Kratko, a 70-year-old military widow. *Id.* at 5. During the group's camping trip, the children played on the property, visited the local library for child-specific programming, visited several tourist sites, and helped Ms. Kratko. *Id.* at 6. Mr. Brashear and Ms. Moreland, however, continued to work. *Id.*

Shortly after arriving on Ms. Kratko's property, Paula Stevens[5]—a former associate of Mr. Brashear, who seemingly lived close to the area where Plaintiffs' group was camping—and Mr. Brashear got into a dispute regarding the group's use of Ms. Stevens' electricity. *Id.* The dispute resulted in multiple complaints to the Prince George's County police. *Id.* According to Plaintiffs, Mr. Brashear and Ms. Stevens had a pre-existing negative relationship and, consequently, Ms. Stevens had made it a goal "to get Brashear off [Ms. Kratko's] property because she didn't like him[.]" *Id.*

In pursuit of this goal, Ms. Stevens made several calls to Child Protective Services ("CPS") in Prince George's County, knowing that "CPS is required to investigate all allegations

---

[2] Unless otherwise stated, the background facts are taken from Plaintiffs' Complaint, ECF No. 1, and are presumed to be true.
[3] Plaintiff Brashear is the Director of Southern Maryland Veteran's Association and Ms. Morehead serves as a "housing Development Director for the Veterans[.]" ECF No. 1 at 5.
[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[5] Plaintiffs also refer to this person as Stevenson. *See* ECF No. 1 at 5, 6. In this Memorandum Opinion, the Court will refer to her as Ms. Stevens, which is the name most frequently used by Plaintiffs.

of child abuse or neglect[.]" *Id.* As a result of Ms. Stevens' calls, around July 22 or 23, 2016, the police and an ambulance came to the camping site looking for T.D., Ms. Moreland's son. *Id.* The police returned with a social worker on July 25, 2016. *Id.*

After being notified of these visits, Mr. Brashear called Prince George's Police Dispatcher on the evening of July 25, 2016, in order to ask why the police had been to the group's camping site looking for T.D. *Id.* Mr. Brashear asked the police officers to return to Ms. Kratko's property to evaluate the situation. *Id.* The officers complied. *Id.* After inspecting the site, questioning Mr. Brashear and Ms. Moreland, and viewing T.D. and C.K., the officers stated that they had not found any evidence of abuse or neglect. *Id.*

On the morning of July 28, 2016,[6] an investigator and a supervisor in the CPS section of PGDSS—Defendant Mary Peyton and Defendant Thomas Weimer, respectively—along with two police officers, returned to the camping site and stated that they were there "*to pick up the children*[.]" *Id.* at 6–7 (emphasis in original). Mr. Brashear and Ms. Moreland tried to ask Defendant Peyton why the children were being taken, but she did not provide that information. *Id.* at 7. Defendants Peyton and Weimar took the children into custody and removed them from Ms. Kratko's property. *Id.*

According to Plaintiffs, the children were committed to shelter care based on only the false evidence and testimony of Defendant Peyton. *Id.* Plaintiffs also allege that Defendant Peyton subjected C.K. "to psychological 'interrogation' by repeatedly 'questioning' her about the care she received from Brashear and Moreland, and attempting to coerce her into stating false facts to acquire damaging evidence[.]" *Id.* Moreover, Plaintiffs claim that Defendants Peyton,

---

[6] In their preliminary statement and in the first factual allegation, Plaintiffs allege that C.K.'s removal occurred on July 27, 2016. ECF No. 1 at 1–2. Elsewhere in their complaint, however, Plaintiffs allege that C.K.'s removal occurred on July 28, 2016. *Id.* at 6–7.

Hayden, Wilkerson, and other unnamed defendants "made sure C.K. was unavailable for the initial shelter hearing at which point her testimony would in all likelihood have ended the process." *Id.* at 8.

Defendants[7] kept C.K. in their care for thirty days and did not allow communication, visitation, or contact with Plaintiff Rozanne Kingston, C.K.'s mother. *Id.* According to Plaintiffs, C.K. "was held as a virtual prisoner, constantly watched, and corrected by the 'foster parents.'" *Id.* Additionally, while C.K. was in Defendants' custody, Defendants "capriciously clipped C.K.['s] hair[, which] she had never had cut, and had false 'hair weaves' implanted." *Id.*

Although, C.K.'s appointed counsel, Defendant Ransome,[8] "failed miserably to act on C.K.'s behalf, and sided fully with the DSS Defendant's [sic] in retaining illegal custody of C.K. by the agency[,]" C.K.'s case was eventually closed. *Id.* Defendants released C.K. into Rozanne Kingston's custody on August 26, 2016. *Id.* at 9.

### B. Procedural History

Plaintiffs, each proceeding *pro se*, filed their Complaint on March 21, 2019, in the United States District Court for the Southern District of Texas ("Texas District Court"). ECF No. 1. In the Complaint, Plaintiffs name[9] DHS, PGDSS, Prince George's County Office of Law, Lourdes R. Padilla, Gloria Brown-Burnett, Thomas Weimer, Shara Hayden, Mary Peyton,[10] Jared

---

[7] Occasionally, in the Complaint, Plaintiffs refer generally to "Defendants" without it being clear which specific defendants are being referenced. *See* ECF No. 1 at 8.

[8] The Court notes that Defendant Ransome is not identified in the caption of Plaintiffs' complaint nor in the "Defendants" section of the Complaint nor in any of the individual claims.

[9] The Plaintiffs did not consistently list the Defendants against whom they are bringing this civil action; however, the Court will assume for the sake of this Memorandum Opinion that Plaintiffs intended to bring this action against any party listed in the caption of the Complaint, listed in the "Defendants" section of the Complaint, or referred to as a Defendant in the body of the Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a pro se complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" (internal citations omitted)). Moreover, the Court will assume that Plaintiff is suing all the individual Defendants in both their individual and official capacity. *Id.*

[10] The parties spell this Defendant's name inconsistently in the filings associated with this action—"Peyton" versus "Payton". This Court will use the spelling "Peyton" in its Memorandum Opinion and Order.

McCarthy, Laurie Wilkerson, Laurentia Lewis, and Defendant Ramone as Defendants. ECF No. 1; *see also* ECF No. 24-1. On March 22, 2019, the Texas District Court sent Plaintiffs a Notice of Case Filing, which, among other things, informed Plaintiffs that:

> It is your responsibility to prepare and have one summons issued for each of the defendants named in your complaint pursuant to Fed. R. Civ. P. 4. The AO 440 summons form is available on the U.S. Court website, www.uscourts.gov, in the Forms section. You are also responsible for service of the summons and complaint unless otherwise ordered by the court. If you do not have summons issued and served within 90 days of the filing of your complaint, the court may dismiss it, ending your case.

ECF No. 2 at 1.

On July 16, 2019, the Texas District Court entered an Order to Show Cause, instructing the parties "to file written statements, each no longer than 5 pages, by **August 12, 2019,** to show cause why the case should not be transferred to the U.S. District Court for the District of Maryland." ECF No. 6 at 2 (emphasis in original). The parties had not filed any such statements as of August 2, 2019, and a copy of the Order to Show Cause had been returned as undeliverable to Plaintiff Kingston. ECF Nos. 7, 8. Consequently, the Texas District Court dismissed Plaintiffs' Complaint without Prejudice. ECF No. 8.

The Texas District Court eventually vacated its dismissal order on January 23, 2020. ECF No. 17. In its order vacating the dismissal, the Texas District Court instructed Plaintiffs to file proof of service on the Defendants by no later than February 21, 2020. ECF No. 17.

The Texas District Court transferred the instant action to this Court on March 3, 2020, pursuant to 28 U.S.C. § 1406, after determining that Plaintiffs had failed to show a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas. ECF No. 19 at 2–3. On March 6, 2020, the Clerk of this Court notified all parties that the case had been transferred. ECF No. 22. On March 12, 2020, this Court received Plaintiffs' Proof of Service as to Defendants Jared McCarthy and Lourdes Padilla, which had been previously

5

filed in the Texas District Court on March 5, 2020.[11] ECF No. 23.[12]

On March 23, 2020, State Defendants (DHS, PGDSS, Padilla, Brown-Burnett, Hayden, Weimer, and Peyton) filed the instant Motion to Dismiss. ECF No. 24. The Clerk of this Court sent Plaintiffs a Rule 12/56 Notice on March 25, 2020, informing them of their right to file a response to this motion and warning that a failure to respond could lead to dismissal. ECF No. 25 at 1. Plaintiffs filed a Motion for Extension of Time to Respond on May 4, 2020, ECF No. 26, which the Court granted on October 7, 2020, extending the deadline to October 21, 2020. ECF No. 27. Plaintiffs have not filed any response to State Defendants' Motion to Dismiss.

## II.     DISCUSSION

In their Motion to Dismiss, State Defendants argue that the Court should dismiss this action because: (1) Plaintiffs did not timely serve Defendants and any service Defendants did receive was improper; (2) Plaintiff Brashear lacks standing to bring this action; (3) Plaintiffs' claims against DHS, PGDSS, and individual State Defendants' in their official capacity are barred by sovereign immunity under the Eleventh Amendment; and (4) Plaintiffs' complaint fails to state a claim upon which relief can be granted. The Court will address the first three arguments and, finding they provide ample basis for dismissal of the entire Complaint, need not address the fourth.

### A.     Dismissal is Appropriate Pursuant to Fed. R. Civ. P. 4(m) for Untimely Service

Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve a defendant within 90

---

[11] Although Plaintiff's "Proof of Service" includes a statement that the document was hand delivered on February 15, 2020—*i.e.* within the Texas District Court's deadline, ECF No. 17—this cannot be true since the United States Post Office Receipt included with the "Proof of Service" is from February 18, 2020. ECF No. 23.

[12] The Court recognizes that the United States Post Office receipt attached to Plaintiffs' "Proof of Service" includes information about mailings to three addresses—*i.e.*, three distinct certified mail numbers and three distinct certified mail receipts—however, only Lourdes Padilla and Jared McCarthy's names are visible. *See* ECF No. 23 at 3. Thus, the Court only has Proof of Service as to those two Defendants.

days of filing a complaint. If a plaintiff fails to abide by this requirement, Rule 4(m) provides that, upon a motion by the defendant, or on its own after providing the plaintiff with notice, the Court "must dismiss the action without prejudice against the defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "A plaintiff may escape dismissal for failure to timely serve process only if []he demonstrates 'good cause' for the delay." *Martinez v. United States*, 578 F. App'x 192, 193 (4th Cir. 2014) (quoting Fed. R. Civ. P. 4(m)). Thus, absent a showing of good cause, the complaint must be dismissed; "[t]he Court has no discretion to salvage the action." *Braithwaite v. Johns Hopkins Hosp.*, 160 F.R.D. 75, 77 (D. Md. 1995) (citation omitted); *see also Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir. 1995) ("Rule 4(m) requires that if the complaint is not served within [90] days after it is filed, the complaint must be dismissed absent a showing of good cause."). Although dismissal pursuant to Rule 4(m) is without prejudice, that dismissal "does not . . . give the [plaintiff] a right to refile without the consequence of time defenses, such as the statute of limitations." *Mendez*, 45 F.3d at 78.

Good cause may be established in a number of ways, "for instance, where a defendant is evading service, court staff misdirected a pro se plaintiff as to the appropriate procedure, or a plaintiff was unaware of the defect in service until after the deadline had passed." *Tenenbaum v. PNC Bank Nat. Ass'n*, No. CIV.A. DKC 10-2215, 2011 WL 2038550, at *4 (D. Md. May 24, 2011) (citing *Hoffman v. Baltimore Police Dep't*, 379 F. Supp. 2d 778, 786 (D. Md. 2005); 4B Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1137 (3d ed. 2010 supp.)). "The common thread amongst all of these examples is that the interference of some outside factor prevented the otherwise-diligent plaintiff from complying with the rule." *Id.* (citing *Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 439 n.9 (D. Md. 2001)). "[I]nadvertence or neglect of counsel," however, will not suffice to satisfy the standard

7

of "good cause." *Braithwaite*, 160 F.R.D. at 76–77.

Here, the day after Plaintiffs filed their Complaint, the Texas District Court issued a Notice explaining how Plaintiffs needed to proceed with serving Defendants and warning Plaintiffs that if they did not have "summons issued and served within 90 days of the filing of [the] complaint, the court may dismiss it, ending [Plaintiffs'] case." ECF No. 2 at 1. Despite this Notice, Plaintiffs had yet to serve any of the Defendants in this action ten months later. Consequently, the Texas District Court ordered Plaintiffs to file proof of service on Defendants by "[n]o later than **February 21, 2020**[.]" ECF No 17 at 1 (emphasis in original). Without explanation, Plaintiffs missed this deadline and did not file Proof of Service with the Texas District Court until March 5, 2020. ECF No. 23. Moreover, Plaintiffs only filed Proof of Service as to two Defendants, Defendants Padilla and McCarthy. ECF No. 23. Defendant Padilla was served on March 3, 2020, when "an envelope containing a CD and a summons . . . was delivered to the DHS mailroom[.]" ECF No. 24-2 ¶ 4; *see* Md. R. 2-121 ("Service by certified mail . . . is complete upon delivery."). Defendant McCarthy was served on February 25, 2020. *USPS Tracking*, USPS.com, https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=70162710000093587734 ("Your item was delivered to an individual at the address at 11:59 am on February 25, 2020 in UPPER MARLBORO, MD 20772"); Md. R. 2-121. Thus, the only two Defendants that have been served in this case did not receive service until after the Texas District Court's February 21, 2020 deadline, and over eleven months after the Complaint was filed. Plaintiffs have yet to provide any argument that there was "good cause" for their failure to timely serve Defendants. In light of the Texas District Court's clear instructions to Plaintiffs regarding how they must proceed with serving the Defendants and the lack of any good cause to extend the deadline for service, this

action must be dismissed without prejudice as to all Defendants pursuant to Rule 4(m).[13]

### B. Dismissal is Appropriate Under Fed. R. Civ. P. 12(b)(1) Because Plaintiff Brashear Lacks Standing to Bring this Action

Even if Plaintiffs had properly served Defendants, Plaintiff Brashear lacks standing to bring this action. Article III of the Constitution limits federal judicial powers to "cases and controversies," and a plaintiff may only seek redress for a legal wrong if that plaintiff (1) suffered an injury-in-fact; (2) the plaintiff's injury is fairly traceable to the defendant's conduct; and (3) the injury is likely to be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff establishes injury-in-fact if he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). However, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [the Supreme Court] has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Because standing is an element of subject matter jurisdiction, a court should analyze a defendant's motion to dismiss for lack of standing under Rule 12(b)(1). *See McInnes v. Lord Baltimore Emp. Ret. Income Account Plan*, 823 F. Supp. 2d 360, 362 (D. Md. 2011) (citing *White Tail Park, Inc. v. Stroube,* 413 F.3d 451, 459 (4th Cir. 2005)). When such a motion has been filed, the plaintiff bears the burden of proving that jurisdiction exists. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). A court should grant the motion only "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of

---

[13] Because the Court dismisses this action against all Defendants for failing to serve Defendants in compliance with Rule 4(m), it is unnecessary to consider whether the service to Defendants Padilla and McCarthy complied with Maryland's rules for service of process.

law." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In making this determination, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*

In the instant action, the Complaint is devoid of any alleged injury to Plaintiff Brashear. ECF No. 1. Instead, all of the injuries alleged in the Complaint—false arrest, false imprisonment, bodily mutilation, severe and ongoing mental and emotional distress, and denial of freedom of association—are injuries allegedly suffered by C.K., to whom Mr. Brashear has no legal or familial connection. ECF No. 1 at 1–2. In fact, the Texas District Court notes this apparent lack of injury-in-fact—and thus standing—early on, stating in its July 16, 2019 Order to Show Cause that "Brashear does not allege what his connection to Kingston's [daughter] is, or why he is permitted to appear on behalf of Kingston's [daughter]." ECF No. 6 at 1.

While he has not responded to the instant motion, Mr. Brashear tried to clarify his standing in two previous filings in the Texas District Court. ECF Nos. 12, 15. In these filings, Mr. Brashear asserted that, at the time of her seizure by Defendants, C.K. was "under his care and supervision" and he was her "immediate consensual caretaker[.]" ECF No. 12 ¶ 3; ECF No. 15 ¶ 3. Additionally, Mr. Brashear asserts that Defendants "falsely inculpated [him] in furtherance of their violation of the civil rights of C.K., T.D., Anne Moreland, Rozanne Kingston, and Daniel Brashear[.]" ECF No. 12 ¶ 4; ECF No. 15 ¶ 4. Finally, Mr. Brashear explains that he "is the Director of the then Southern Maryland Veteran's Association, which [was] . . . authorized . . . to assist military veterans and Dependents to the full extent authorized by law" and that "Rozanne Kingston, C.K., Anne Moreland, and T.D. are all Dependents of a military veteran." ECF No. 12 ¶¶ 5–6; ECF No. 15 ¶¶ 5–6. Plaintiff Brashear's arguments are

10

unconvincing.

As a preliminary issue, "[t]he right to litigate for *oneself* [*i.e.*, to proceed *pro se*] . . . does not create a coordinate right to litigate for *others*." *Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005) (emphasis in original). "Except in the rarest of circumstances, federal courts have been uniformly hostile to attempts by non-attorneys to represent others in court proceedings." *Brown v. Ortho Diagnostic Sys., Inc.*, 868 F. Supp. 168, 170 (E.D. Va. 1994). "The reasoning behind this rule is two-fold: it protects the rights of those before the court, and jealously guards the judiciary's authority to govern those who practice in its courtrooms." *Myers*, 418 F.3d at 399 (internal citations omitted). This reasoning extends to *pro se* parents or guardians litigating on behalf of the children under their charge. "[P]arents cannot assert claims on behalf of their children *without an attorney*." *Steverson v. Dantone*, No. RWT-13-3392, 2014 WL 2616989, at *2 (D. Md. June 11, 2014) (emphasis added) (holding that the Plaintiff had failed to establish standing where he had based his standing in part on being the guardian for his minor daughter); *see Myers*, 418 F.3d at 401 (holding "non-attorney parents generally may not litigate the claims of their minor children in federal court"). Consequently, Mr. Brashear, proceeding *pro se*, does not have the authority to litigate on behalf of C.K. as her caretaker nor does his status as Director of Southern Maryland Veteran's Association give him authority to litigate on behalf of Rozanne Kingston, C.K., Anne Moreland, or T.D. without an attorney.

Secondly, as previously noted, "[c]ourts have long adhered to the rule that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 214 (4th Cir. 2020). Mr. Brashear's attempt to support his standing with C.K. and her family's injuries contradicts this general practice. Additionally, the Complaint states that Ms. Kingston is

11

asserting C.K.'s and her own rights before this Court. ECF No. 1 at 2.[14] It is unclear why it would be necessary for Mr. Brashear, a party without familial or legal relationship to the Kingston family, to do so as well.

Finally, Mr. Brashear's attempt to assert that he has standing because Defendants "falsely inculpated [him] in furtherance of their violation of the civil rights of C.K., T.D., Anne Moreland, Rozanne Kingston, and Daniel Brashear" is insufficient. The Supreme Court has held that to have standing a plaintiff's injury must be "concrete and particularized[,]" *Spokeo, Inc.*, 136 S. Ct. at 1548, and likely to be redressed by a favorable judicial decision, *Lujan*, 504 U.S. at 560–61. The injury Mr. Brashear describes in his correspondence with the Texas District Court is completely absent from the Complaint in this action, which does not include any factual allegations that support or describe such an injury. ECF No. 1 at 4–9. Moreover, Plaintiffs' claims are not related in any way to such an injury. *See Id.* at 9–13. Thus, a favorable decision on the claims outlined in the Complaint would not redress any harm Mr. Brashear has allegedly experienced. Plaintiff Brashear has not met his burden of proving his standing and thus his claims against all Defendants are dismissed on that basis as well.

    **C.**    **DHS, PGDSS, and Individual State Defendants in their Official Capacity are Protected by Sovereign Immunity Under the Eleventh Amendment**

Plaintiffs' claims against State Defendants are also barred by the Eleventh Amendment of the U.S. Constitution. Under the Eleventh Amendment, a State, including its agencies and departments, is immune from suit brought by its citizens or the citizens of another state in Federal court without the State's consent.[15] *Pennhurst State Sch. & Hosp. v. Halderman*, 465

---

[14] The Court notes that Ms. Kingston, as C.K.'s mother, also does not have the authority to litigate C.K.'s claims without an attorney.

[15] Both DHS and PGDSS are considered State entities and thus are covered by the protections of the Eleventh Amendment. *See* Md. Code Ann. Hum. Servs. § 2-201 ("There is a Department of Human Services established as a principal department of the State government."); *Keller v. Prince George's County*, 923 F.2d 30, 32 (4th Cir. 1991)

U.S. 89, 100 (1984). The Fourth Circuit has recognized three exceptions to the Eleventh Amendment:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

*See Hyde v. Md. State Bd. of Dental Exam'rs*, No. 1:16-cv-02489-ELH, 2017 WL 2908998, at *6 (D. Md. July 7, 2017) (citing *Lee-Thomas v. Prince George's Cty Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012)).

None of these exceptions are applicable here. Congress has not abrogated Eleventh Amendment immunity for Constitutional claims brought pursuant to 42 U.S.C. § 1983, such as Plaintiffs' claims here. *See Borkowski v. Baltimore Cty., Md.*, No. DKC 18-2809, 2020 WL 5816369, at *6 (D. Md. Sept. 30, 2020) (holding that state entities are immune from claims under 42 U.S.C. §§ 1983, 1985, and 1986); *Smothers v. Maryland*, No. DKC 18-3451, 2019 WL 3323215, at *2 (D. Md. July 24, 2019) ("Congress did not abrogate States' Eleventh Amendment immunity for claims arising under 42 U.S.C. §§ . . . 1983[] or 1985"). Second, Plaintiffs seek damages, not prospective injunctive relief. ECF No. 1 at 14. Third, while the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't §§ 12-104 & 12-201(a), it has not waived its immunity under the Eleventh Amendment for all suits in federal court. *See Pennhurst*, 465 U.S. at 99 n.9 ("a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment

---

(holding the Prince George's County Department of Social Services is a state agency and therefore immune from suit).

immunity in the federal courts"); *Weller v. Dept. of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 397 (4th Cir. 1990).

Claims against State defendants acting in their official capacities are similarly barred by the Eleventh Amendment. *See Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir. 2003) ("[F]or purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity [as the State]."); *see also Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) ("a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents") (citation omitted). Therefore, all claims against the DHS, PGDSS, and the remaining State Defendants in their official capacities must be dismissed.

### III. CONCLUSION

For the foregoing reasons, State Defendants' Motion to Dismiss is granted and this action is dismissed as to all Defendants. A separate Order shall issue.

Date: <u>December  18, 2020</u>                          /s/
                                                    GEORGE J. HAZEL
                                                    United States District Judge